UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
          v.                      )     CRIMINAL NO. 04-10099-GAO
                                  )
RYAN CARTER                       )

DEFENDANT'S SUPPLEMENT TO HIS POST-HEARING MEMORANDUM

At oral argument, the government maintained that seizure of the crates, even for an indefinite period, did not implicate a Fourth Amendment interest of defendant.  In response, defendant here addresses the specific Fourth Amendment issues raised by the seizure of the crates, as well as three cases cited by the government.

Additionally, defendant summarizes the government's remaining allegations in its search warrant affidavit after appropriate corrections are made in light of Franks v. Delaware.

1.  The Seizures of Defendant and of the Crates Violated the Fourth Amendment

The government's evidence during the hearing was that defendant claimed three crates, signed for them, and stood on the loading dock waiting for the crates to be fork-lifted onto his truck.  Tr.1.15-16.  On the government's proof, then, defendant had taken possession of the crates at the time of his arrest. The government also maintained that defendant had on several earlier occasions taken possession of crates, Dft. Exh. 7, at 5,

n. 2 (inferentially, then, that defendant was the intended
consignee of these crates).

Under the Fourth Amendment, defendant has the right in his
person and effects "against unreasonable searches and seizures."
"This text protects two types of expectations, one involving
'searches,' the other 'seizures.'  A 'search' occurs when an
expectation of privacy that society is prepared to consider
reasonable is infringed. [footnote omitted].  A 'seizure' of
property occurs when there is some meaningful interference with
an individual's possessory interests in that property. [footnote
omitted]."  United States v. Jacobsen, 466 U.S. 109, 113 (1984).

The "seizures" of the crates, analyzed separately from the
subsequent "searches" of defendant and the crates, implicated two
Fourth Amendment interests: defendant's freedom from interference
with his possessory interest in the crates, and his "liberty
interest in proceeding with his itinerary."  As to the former,
"[a] 'seizure' of property occurs when there is some meaningful
interference with an individual's possessory interests in that
property."  In United States v. Place, 462 U.S. 696 (1983), the
act of "taking custody of Place's suitcase was deemed an unlawful
seizure for it unreasonably infringed 'the suspect's possessory
interest in his luggage.'"  Soldal v. Cook County, 506 U.S. 56,
63 (1992).  Here, Airport Express was preparing to forklift the
crates onto defendant's truck, and the company had on several

-2-

earlier occasions, according to the government, given defendant
crates.  By arresting defendant and seizing the crates, the
government interfered with his control over the crates,
implicating the Fourth Amendment.

Additionally, the government's seizure of the crates (as
well as of defendant) triggered a second Fourth Amendment
interest, defendant's liberty interest in "proceeding with his
itinerary."  Again, in United States v. Place, the Supreme Court
"found that to detain luggage for 90 minutes was an unreasonable
deprivation of the individual's 'liberty interest in proceeding
with his itinerary,' which also is protected by the Fourth
Amendment."  Soldal v. Cook County, 506 U.S. at 63 n. 8.  One
notes that defendant in Place had not been arrested, making the
case less egregious than the present one, yet in Place the
interference with defendant's itinerary by seizure of the luggage
was sufficient to implicate the Fourth Amendment.[1]

In sum, the government's argument that seizure of the crates

---

[1] Neither of these Fourth Amendment interests (the
possessory interest or the liberty interest), as a technical
matter, requires proof of an interference with a privacy interest
of defendant.  ("Although lacking a privacy component, the
property rights [of defendant Place in his luggage] nonetheless
were not disregarded, but rather were afforded Fourth Amendment
protection."  Soldal v. Cook County, 506 U.S. 56, 63-64 (1992).)
Indeed, Fourth Amendment protections "often have nothing to do
with privacy at all."  Katz v. United States, 389 U.S. 347, 350
(1967).  Here, the initial violations of the Fourth Amendment
were seizures – without probable cause – of person and property,
which were followed by searches which also, and separately,
violated the Fourth Amendment.

did not trigger a violation of defendant's Fourth Amendment rights misconstrues <u>Place</u>, <u>Soldal</u>, and other Supreme Court precedent which establish a person's constitutional freedom to proceed with property in their possession without unlawful and extended governmental interference.

2.    The Cases Cited by the Government Support Defendant's Standing

The cases cited by the government at oral argument are, strictly speaking, "search" cases which do not address the "seizure" component which is an additional part of the violations here.  In two of the cited cases, government agents had already searched items, whether in the mails or during shipment, before anyone sought to take possession, and the cases focus on whether defendant had a privacy interest in the searched item.  These two cases (<u>Koenig</u> and <u>Pierce</u>) are helpful to the defense, as the courts looked favorably on standing for the actual recipient of the packages.  The final case suggests that standing exists for recipients of packages sent using fictitious names, a case also helpful to the defense.

In the first of the government's cases, <u>United States v. Koenig</u>, 856 F.2d 843 (7th Cir. 1988), Fed Ex employees opened a package in transit to its destination and, finding drugs, notified police.  Police made a controlled delivery to the addressee (Koenig).  The court ruled that Koenig as recipient had standing to contest to the seizure of the package.  As to a

second party, a drug purchaser named Graf who arrived at Koenig's apartment later to buy some drugs, the court denied standing, stating that Graf was neither owner of the delivered drugs, nor did he have "the ability to control the parcel once delivered." (Indeed, Graf had specifically disavowed any interest in the delivery, saying he was not a co-conspirator, only a customer of Koenig, and had no control over the drugs.)  Thus, Koenig hardly aids the government's cause.

In United States v. Pierce, 959 F.2d 1297 (5th Cir. 1992), airline employees opened a package, and, finding drugs, notified police.  The package was delivered under controlled circumstances to the named addressee (not a defendant), who, the court noted helpfully, "may have had standing."  Id. at 1303, n. 11. Defendant instead was waiting in a car outside and was denied standing.

In United States v. Givens, 733 F.2d 339 (4th Cir. 1984), the court denied standing for an intended recipient of a package to contest its seizure.  The package had been addressed to a real corporation, and not to a fictitious alter ego.  Givens noted that "there is authority for the proposition that even a package addressed to a fictitious addressee created by defendants may furnish a basis for a legitimate expectation of privacy," citing Walter v. United States, 447 U.S. 649, 654 (1980) (opinion of Stevens, J.).  733 F.2d at 341, n. 2.  In Walter, the Supreme

-5-

Court had held that police could not lawfully examine film found in a package sent to a fictitious addressee. In any event, the ruling in Givens was a narrow one, as the recipient claimed an interest only in the content of the package, not in the package itself which was addressed to the corporation which itself consented to the search.

Givens was discussed and distinguished in a case from this circuit, United States v. Allen, 741 F.Supp. 15 (D. Me. 1990), which held that a person who hires another person to receive a drug envelope sent in the mail has standing to contest its seizure. The Allen court, in ruling that a bailor of a contraband package has standing, noted that Givens did not address whether standing may be claimed by one who owns or who controls a package after delivery. The Allen court further made note of First Circuit law identifying factors which bear on standing, which include:

> ownership, possession, and/or control; historical use
> of the property searched or the things seized; ability
> to regulate access; the totality of the surrounding
> circumstances; the existence or nonexistence of a
> subjective anticipation of privacy; and the objective
> reasonableness of such an expectancy under the facts of
> a given case.

Id. at 17. Applying these factors here, the government's evidence included that defendant claimed the crates and was poised to transport them as he had similarly done, as the government asserted, on numerous occasions. In each instance,

-6-

Airport Express had treated defendant as the proper consignee of
the crates and had completed delivery to him of sealed crates.
The manner of concealment of the marijuana within the crates
(plastic wrapped, within plastic bins, within cardboard boxes,
within wooden crates) bespoke both a subjective expectation of
privacy and objectively apparent efforts to ensure privacy.

At bottom, the government's cases do little to aid the
government's claim that an actual recipient of an item has no
standing.  Nor do they address the Fourth Amendment interests
also implicated by the seizures of the crates, namely defendant's
possessory interest and his liberty interest.  Finally, it would
be high irony if a person, arrested on suspicion that items he
was transporting contained contraband and held awaiting proof of
that, was denied standing to contest the property seizure.

3.   The Appropriate Relief under Franks v. Delaware and the
     Fourth Amendment

Under Franks v. Delaware, 438 U.S. 154 (1978), the affidavit
in support of the search warrant must be read with false
statements excised and with material omissions restored.
Further, the fruits of violations of the Fourth Amendment must be
excised.  With these corrective steps taken here, the corrected
affidavit would (1) state that the three crates shared a common
airbill number with the Dorchester crate (not that they shared
"the same customer account number" or originated from the "same
customer"); (2) omit any alleged post-arrest statement of

-7-

defendant (since any statements were fruits of an unlawful arrest
and taken in violation of the Fifth Amendment); (3) omit any
reference that defendant's phone corresponded to the phone number
listed on the shipping labels (since the government's possession
and examination of the phone was the fruit of an unlawful
seizure); and (4) omit that a canine alert occurred (the evidence
being that a canine arrived but exhibited no behavior
demonstrating an alert, and that the canine inspection was a
fruit of an unlawful seizure of and intrusion into the memory of
defendant's phone).  The resulting affidavit would not establish
probable cause, and the warrant accordingly would fail.

                              RYAN CARTER
                              By his attorney,

                              /s/ Charles P. McGinty

                              Charles P. McGinty
                                 B.B.O. #333480
                              Federal Defender Office
                              408 Atlantic Avenue, 3rd Floor
                              Boston, MA  02110
                              Tel: 617-223-8061


Date: November 30, 2005